UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

RLI INSURANCE COMPANY,

        Plaintiff,

   v.

R & L BROSAMER, INC., a California Corporation, DRILL TECH DRILLING & SHORING, INC., a California Corporation, and DOES 1 through 50, inclusive,

        Defendants.

CASE NO. S-05-2238 WBS GGH

MEMORANDUM AND ORDER RE: MOTION TO DISMISS OR STAY

----oo0oo----

In the midst of a dispute over insurance coverage, plaintiff, RLI Insurance Company, filed this action pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, asking the court to adjudicate its rights and obligations under the terms of plaintiff's insurance policy. Defendant, R & L Brosamer, Inc. ("Brosamer"), filed suit a few days later in state court based on the same dispute. Brosamer now moves this court to dismiss or stay this action, pursuant to Federal Rules of Civil Procedure 12(b)(1), (4), and (6) and its discretionary

1

authority to abstain from hearing cases involving the DJA.

I.   Factual and Procedural Background

On December 3, 2003, Brosamer "entered into a contract with the California Department of Transportation ('CalTrans') to construct improvements in the interchange between Interstate 80 at Douglas Boulevard and Sunrise Avenue in Roseville, California ('the [p]roject')." (First Am. Compl. ¶ 11.) The project plans called for the excavation of a tunnel, which involved the construction of temporary structures to shore up the walls until permanent supports could be introduced. (Id. ¶ 12.) To assist in the construction of temporary supports, Brosamer subcontracted with defendant Drill Tech. (Id. ¶ 13.) It also, prior to the start of the project, purchased a Builders Risk insurance policy from plaintiff. (Id. ¶ 10.)

Defendants began work on the tunnel portion of the project on August 16, 2005. (Id. ¶ 14.) Using steel nails inserted into the earth and lightweight concrete to support the tunnel walls, defendants achieved a depth of 25 to 30 feet without incident. (Id.) However, in late September, 2004, the retaining walls began to fail. (Id. ¶¶ 15-16.) Despite measures taken to reinforce these structures, defendants were unable to stabilize the soil and experienced multiple cave-ins as work progressed. (Id. ¶¶ 15-20.) Eventually, the shifting earth in the tunnel started to take a toll on the initial construction of the related overpass, with some structures sinking and others cracking. (Id. ¶ 21.)

To cover the losses related to defendants' unsuccessful attempts to secure the tunnel walls, Brosamer submitted a

Property Loss Notice to plaintiff on November 15, 2004, pursuant to the Builders Risk insurance policy. (Id. ¶¶ 10, 22.) Subsequently, plaintiff undertook an investigation into the incident to determine whether the losses incurred were actually covered by the policy. (Id. ¶ 23.) Based on the results of that investigation, conducted by Geotechnical Consultants Inc. ("GCI"), plaintiff "determined that its policy did not afford coverage for the reported loss."[1] (Id. ¶ 25.)

In response, Brosamer employed its own expert, Earth Support Systems, Inc. ("ESS"), to assess the validity of its claims and to rebut plaintiff's grounds for rejecting them. (Def.'s Mot. to Dismiss or Stay 4.) ESS disagreed with several of GCI's findings and based on these points of contention, Brosamer urged plaintiff to reconsider its denial of Brosamer's claim. (Id. at 5.) Brosamer asserts that plaintiff led it to believe that a favorable resolution was forthcoming, but then, without giving Brosamer prior notice, plaintiff filed this suit on November 3, 2004, seeking declaratory judgment in federal court.[2] (Id. at 7.)

---

[1] The reasons for denying the claim, explained in detail in the complaint, are not relevant to the instant motion.

[2] The original complaint was amended on December 19, 2005 to include claims against Drill Tech Inc., who is a defendant, along with plaintiff here, in Brosamer's state court action. However, because the amended complaint did not resolve the grounds for defendant Brosamer's motion to dismiss, the court may still consider the motion. Fitzgerald v. State, No. Civ. 96-2077, 1997 WL 579193, at *3 (D. Ariz. July 9, 1997) (explaining that although an amended complaint typically moots all pending motions, "the [c]ourt may exercise its discretion to consider a motion to dismiss the original complaint where the amended complaint fails to cure the defects of the original complaint."); see also Datastorm Techs., Inc. v. Excalibur

3

Brosamer further contends that plaintiff's suit was responsive to its own threats to initiate a lawsuit to resolve its disputed insurance claim. (Id.) Indeed, the parties do not contest that Brosamer warned plaintiff's attorneys that it would take such action if plaintiff "did not change its position on coverage for the loss by November 4, 2005." (Id.) Brosamer did file suit in state court on November 14, 2005, alleging breach of contract and bad faith. (Id. at 8; Brosamer Decl. Ex. A (Complaint, R & L Brosamer, Inc. v. RLI Ins. Co., No. C 05-2337 (Cal. Super. Ct. filed Nov. 14, 2005)).)

With suits essentially involving the same dispute pending in both state and federal court, Brosamer now requests that this court dismiss, or at least stay, this federal proceeding while the state court case runs its course. Brosamer captioned this motion as one pursuant to Federal Rule of Civil Procedure 12(b)(1), (4) and (6); however, because Brosamer's motion is based on the judicially created doctrine of abstention, only Rule 12(b)(6) applies.[3] Accordingly, the court will consider

---

Commc'ns, Inc., 888 F. Supp. 112, 114 (N.D. Cal. 1995); Roessert v. Health Net, 929 F. Supp. 343, 347 (N.D. Cal. 1996).

[3] Assuming that parties must fit a motion to dismiss based on abstention doctrines into the rubric of Rule 12(b), courts that have faced this issue have found that abstention arguments get at the plaintiff's "failure to state a claim upon which relief can be granted," which is the proper subject matter of a Rule 12(b)(6) motion. Jonathan Club v. City of Los Angeles, 680 F. Supp. 1405, 1408-09 (C.D. Cal. 1988) ("[Abstention challenges are] properly raised in a motion to dismiss for failure to state a claim upon which relief can be granted."); see also Carter v. Doyle, 95 F. Supp. 2d 851, 856 n.8 (N.D. Ill. 2000) (same). Logically, this makes sense, because when abstention is warranted, the court cannot grant the relief sought without abusing its discretion. See also Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir.

4

Brosamer's abstention arguments in light of the constraints of that Rule.

II.  Discussion

    A.  Legal Standards

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the pleader. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cruz v. Beto, 405 U.S. 319 (1972).  In general, the court may not consider material other than the facts alleged in the complaint, however, reliance on matters of public record is allowed. Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996) (noting that a district court cannot rely on "materials outside the pleadings in support or opposition to [a] motion [to dismiss]"); Mack v. S. Bay Beer Distribs., 798 F.2d 1279, 1282 (9th Cir. 1986)(recognizing that matters of public record can be relied upon when deciding a Rule 12(b)(6) motion), abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991).  Therefore, because Brosamer's state court complaint has been filed in the Contra Costa County Superior Court, it is a matter of public record, and the court can rely on it in deciding whether to abstain from deciding the instant motion.  See Kent v. Daimlerchrysler Corp., 200 F. Supp. 2d 1208, 1219 (N.D. Cal. 2002) ("[A] legal memorandum filed in a state court action . . . is a public record.").

---

2005) ("[I]t is sometimes permissible to grant a motion to dismiss based on an affirmative defense . . . ."); Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989) ("[A] defendant may raise [an] affirmative defense in a pre-answer motion to dismiss.").

5

Regarding abstention, "there is no presumption in favor of [it] in declaratory actions generally, nor in insurance coverage cases specifically." Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc). However, because the grant of a declaratory judgment is a discretionary act, a court may decline to entertain such actions even when jurisdiction over the subject matter of the claim is otherwise proper. 28 U.S.C. § 2201(a); Dizol, 133 F.3d at 1223 ("[T]he Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority.'" (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 250 (1952) (Reed, J., concurring))). In other words, when a declaratory judgment is at issue, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995).

Still, a court cannot yield jurisdiction on a "whim or personal disinclination," but instead must assess whether the federal declaratory action will or will not satisfy a set of eight factors, most clearly laid out in Government Employees Insurance Co. v. Dizol.[4] 133 F.3d at 1223 (quoting Pub. Affairs Assocs. v. Rickover, 369 U.S. 111, 112 (1962)). Additionally, the court's discretion is further constrained by the presence of "claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the

---

[4] These factors are identified and applied to the facts of this case in Part II.C.

6

case." <u>Snodgrass v. Provident Life & Accident Ins. Co.</u>, 147 F.3d 1163, 1167-68 (9th Cir. 1998) (emphasis added). Such claims "are not subject to the Declaratory Judgment Act's discretionary jurisdictional rule . . . [and] invoke the 'virtually unflagging' obligation of the district court to hear jurisdictionally sufficient claims." <u>Id.</u> at 1167 (citations omitted). Their presence and impact should be considered first before undertaking an analysis of the eight factors. <u>Supermicro Computer Inc. v. Digitechnic, S.A.</u>, 145 F. Supp. 2d 1147, 1150 (N.D. Cal. 2001).

     B.   <u>Impact of Independent Claims on the Court's DJA Discretion</u>

In the instant action, plaintiff argues that independent claims, the compulsory counterclaims that Brosamer will, allegedly, have to file if this federal action goes forward, preclude dismissal pursuant to the DJA's discretionary jurisdiction rule. Indeed, under Federal Rule of Civil Procedure 13(a), Brosamer would seemingly be required to state as a counterclaim any claim it has against plaintiff that "arises out of the transaction or occurrence that is the subject matter of [plaintiff's] claim" and was not already, "the subject of another pending action" when the federal action commenced.

However, the court is not convinced that a defendant's anticipated compulsory counterclaims can rob the court of its discretion where, as here, a federal action is brought consisting entirely of a declaratory judgment claim aimed at preempting the possibility of a state court action. First and foremost, Brosamer's "compulsory" counterclaims may never actually be raised in federal court. The only consequence Brosamer will face

7

1  if it does not raise these claims now is a waiver of the right to
2  do so in federal court.  Its ability to simultaneously pursue
3  these claims in state court will not be impaired by failure to
4  raise them in this action because "a federal court [cannot]
5  enjoin[] a party from proceeding in state court on a claim that
6  should have been pleaded as a compulsory counterclaim in a prior
7  federal suit."  Seattle Totems Hockey Club, Inc. v. Nat'l Hockey
8  League, 652 F.2d 852, 855 n.5 (9th Cir. 1981) (citing the Federal
9  Anti-Injunction Act, 28 U.S.C. § 2283).
10          Second, Snodgrass, the case relied on by plaintiff for
11 the proposition that independent counterclaims interfere with the
12 court's discretion to refuse to hear suits seeking declaratory
13 relief, involved independent claims brought by the plaintiff.
14 1147 F.3d at 1167.  Compulsory counterclaims were not at issue.
15 Significantly, cases in which the Ninth Circuit has held that
16 counterclaims obligated the district court to entertain claims
17 for declaratory relief have not involved parallel state
18 proceedings and the counterclaims were already in play.  United
19 Nat'l Ins. Co. v. R&D Latex Corp., 242 F.3d 1102 (9th Cir. 2001)
20 (motion to remand); Am. Cas. Co. v. Krieger, 181 F.3d 1113 (9th
21 Cir. 1999) (state court action dismissed by federal defendant
22 after counterclaims filed in answer); Snodgrass, 147 F.3d at 1166
23 (motion to remand); Allstate Ins. Co. v. Kaneshiro, 152 F.3d 923
24 (9th Cir. 1998) (motion to remand); Md. Cas. Co. v. Knight, 96
25 F.3d 1284 (9th Cir. 1996).  This court doubts that the Ninth
26 Circuit would further broaden the independent claim bar to cover

8

hypothetical counterclaims[5] that merely duplicate pending state claims. Such an extension would run headfirst into another Ninth Circuit rule, which counsels that "the primary instance in which a district court should exercise its discretion to dismiss a case is presented when there exists a parallel proceeding in state court." Knight, 96 F.3d at 1288.

Finally, the court doubts that the Ninth Circuit would adopt an approach to actions for declaratory relief that would allow plaintiffs to force defendants to litigate their unremovable state case in federal court. (Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. to Dismiss or Stay 7 (recognizing that Brosamer's state court action is not removable).) This circuit has long frowned upon reactive lawsuits, specifically declaratory actions filed in anticipation of an opponent's plans to initiate litigation. A "federal case is still deemed 'reactive' to the state case" even when the state case is filed second, if the federal action was hastily commenced "in hopes of preempting any state court proceeding." Id. at 1289 (citations and quotations omitted); see also Ven-Fuel, Inc. v. Dep't of the Treasury, 673 F.2d 1194, 1195 (11th Cir. 1982) (equitable considerations require courts to consider "whether the declaratory judgment was filed in apparent anticipation of the other pending proceeding").

///
///

---

[5] The Ninth Circuit has cautioned that substantive counterclaims properly within the court's jurisdiction, <u>once raised</u>, cannot be dismissed pursuant to the court's discretion under the DJA. Knight, 96 F.3d at 1289 ("The district court did not have discretion to dismiss the counterclaim pursuant to 28 U.S.C. § 2201.").

9

1       C.    <u>Application of Factors Governing DJA Discretion</u>

2       Consequently, the court must consider the eight factors identified in <u>Dizol</u> that govern its discretion to stay or dismiss the instant action. The relevant considerations include whether federal declaratory action will or will not: (1) result in a needless determination of state law issues, (2) encourage forum shopping, (3) lead to duplicative litigation, (4) settle all aspects of the controversy, (5) clarify the legal relations at issue, (6) serve only as a procedural fence, (7) result in entanglement between the federal and state court systems, and (8) inconvenience the parties or witnesses. <u>Dizol</u>, 133 F.3d at at 1225 & n.5 (describing the relevant factors governing discretion as provided in <u>Brillhart v. Excess Insurance Company of America</u>, 316 U.S. 491, 495 (1942), and other factors added by the Ninth Circuit to the non-exhaustive <u>Brillhart</u> list).

16       First, retaining jurisdiction over this action would result in a needless determination of state law issues. The federal courts routinely, in diversity and other cases, determine issues of state law. There is nothing "needless" about it; it is an important part of our duties. However, the Ninth Circuit has held that when parallel state proceedings are pending, federal declarations on state law issues are unnecessary. <u>Id.</u> at 1371; <u>see also</u> <u>Smith v. Lenches</u>, 263 F.3d 972, 978 (9th Cir. 2001) ("For the federal court to retain jurisdiction to give declaratory judgment on the same claims [pending in a state court action] would result in a needless determination of state law.").

27       This case is substantially no different from <u>Continental Casualty. Co. v. Robsac Industries</u>, 947 F.2d 1367

10

1  (9th Cir. 1991), <u>overruled on other grounds by</u> <u>Dizol</u>, 133 F.3d at
2  1227, in which the Ninth Circuit reversed the district court's
3  decision to exercise jurisdiction in a declaratory relief action
4  brought by an insurer, pointing out that the federal court could
5  have avoided a needless determination of state law by not
6  exercising its jurisdiction.  <u>See</u> <u>also</u> <u>Am. Nat. Fire Ins. Co. V.</u>
7  <u>Hungerford</u>, 53 F.3d 1012 (9th Cir. 1995).

8         Second, retention of jurisdiction might encourage forum
9  shopping.  Arguably, parties inclined to forum shop will do so
10 whether this court abstains or not.  But if federal courts
11 abstain from accepting jurisdiction in this type of case, it
12 would certainly tend to discourage insurers from filing parallel
13 declaratory relief actions where state court actions are either
14 pending or immanent.  If that is what the Ninth Circuit wants the
15 district courts to discourage, then this factor favors abstention
16 here.

17         When a federal declaratory judgment suit is reactive, a
18 court should not exercise jurisdiction.  <u>Robsac Indus.</u>, 947 F.2d
19 at 1371; <u>see also</u> <u>id.</u> at 1372-73 ("Whether the federal
20 declaratory judgment action regarding insurance coverage is filed
21 first or second, it is reactive . . . .").  Here, plaintiff
22 admits that in light of Brosamer's "coercive threats [to litigate
23 this matter]," it filed suit in federal court "to assure a fair
24 resolution of [the] coverage suit."  (Pl.'s Mem. of P. & A. in
25 Opp'n to Def.'s Mot. to Dismiss or Stay 7.)  Plaintiff's
26 motivations for this federal action are clear: it wanted to
27 control where Brosamer could litigate its coverage claims and it
28 used the DJA to accomplish that end.  Ninth Circuit precedent

11

counsels against this court's consideration of what can only be defined as preemptive litigation.[6]

Third, retention of jurisdiction may lead to duplicative litigation. The court is informed that the Contra Costa County Superior Court has agreed to hold its case in abeyance pending this court's determination whether to abstain. But there is no assurance that it will continue to do so indefinitely. If for any reason the state court is persuaded to lift its stay, this court will be powerless to prevent that court from going forward, and the very same factual and legal issues involved here will be subject to litigation there.

Fourth, from what has been shown, it appears that retention of jurisdiction in this case will resolve all aspects of both the state and federal lawsuits. It appears that the state court claims can be raised as counterclaims and cross-claims in this action.

Fifth, for the same reasons, retention of jurisdiction over this case will clarify the legal relations at issue in both the state and federal lawsuits.

Sixth, it is unclear exactly what the Ninth Circuit means by a "procedural fence," but plaintiff did not file a federal declaratory relief action in hopes of creating a procedural bar to pending state litigation; rather, it simply brought suit in federal court to secure a federal forum. The

---

[6] The court notes however, that while the Ninth Circuit's "reactive suit" approach to deciding the forum shopping factor favors defendant's stance, both parties are guilty of forum shopping here. Plaintiff and defendant both admitted at oral argument that their respective forum preferences are based upon strategic considerations.

12

1 Sixth factor is not concerned with such tactics.

2 Seventh, retention of jurisdiction might result in an entanglement between the federal and state court systems.  As discussed above, although the state court has agreed to hold its case in abeyance pending this court's determination whether to abstain, there is no assurance that it will continue to do so indefinitely.  If that court should lift its stay at any time before the conclusion of these proceedings, the proceedings in this court may well become entangled with the proceedings there.

10 Eighth, the inconvenience to parties and witnesses will not be noticeably different depending on which action--federal, state, or both--goes forward.  The Contra Costa County Superior Court is located in Martinez, which is merely a one or two hour drive from the courthouse where this action will be heard in Sacramento.  There is very little significant difference in the distance of each court from available airports.

III. Conclusion

18 Ultimately, whether this court should retain jurisdiction or abstain is a question for the Ninth Circuit to determine. See Robsac Indus., 947 F.2d at 1370 ("[w]e review de novo the district court's decision to exercise its jurisdiction under the Declaratory Judgments Act when a state action is pending.")  All this court can do is to apply the factors identified in Dizol and Brillhart to the facts as made known to it.  Applying those factors to the facts here, the court concludes that it should exercise its discretion to abstain from accepting jurisdiction over this action.

28 ///

1    IT IS THEREFORE ORDERED that defendant Brosamer's
2 motion to dismiss this action be, and the same hereby is,
3 GRANTED.
4 DATED:  January 17, 2006

*William B. Shubb*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE